**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**IN ADMIRALTY**

————————————————————————— )
 )
**MATHIEU AND AMI BEAUREGARD,** )
 )
  **Plaintiffs** )
 )          **CIVIL ACTION**
**v.** )          **NO. 21-40118- TSH**
 )
**TOWN OF OXFORD and** )
**ARTHUR ROSSI, dba** )
**ROSSI'S CLEANERS** )
  **Defendant.** )
 )
————————————————————————— )

**MEMORANDUM OF DECISION AND ORDER**
**ON DEFENDANT TOWN OF OXFORD'S MOTION TO DISMISS**
**September 16, 2022**


**Introduction**

**Hillman, SJ.**

Plaintiffs Mathieu and Ami Beauregard ("Plaintiffs") have filed this negligence action against the Defendants Town of Oxford ("Defendant Town" or "The Town") and Arthur Rossi, dba Rossi's Cleaners after elevated levels of the chemical trichloroethylene (TCE) were discovered in their private drinking water well. The Plaintiffs filed their complaint in July 2021 in Worcester Superior Court and the matter was subsequently removed to this Court after the Complaint was amended to add a claim under 42 U.S.C. § 1983. The Town now moves to dismiss all counts against it under Rule 12 (b)(6). For the reasons that follow, the motion to dismiss is **granted**.

**Background**

The following facts, taken from the complaint, are accepted as true for the purposes of this motion.  *See Rosenberg v. City of Everett*, 328 F.3d 12, 15 (1st Cir. 2003). Plaintiffs Mathieu and Ami Beauregard are married and are the former residents of the property at issue located at 6 Cherdon Lane, in the town of Oxford, Massachusetts (the "Property"). Defendant Rossi's Cleaners was a company doing business in Massachusetts with a principal place of business at 720 West Main St., Oxford MA ("the Site").

In 1989, when the Site was owned by Rossi's predecessor Dry Vin Cleaners, there was a release of chlorinated hydrocarbons including TCE and perchlorethene ("PCE") from the Site into the groundwater. TCE and PCE are hazardous materials according to the Massachusetts Contingency Plan ("MCP") See 310 C.M.R. 40. The Massachusetts Department of Environmental Protection ("DEP") issued a Notice of Responsibility pursuant to Mass. Gen. L. c 21E  to Dry Vin Cleaners for the release of the chemicals. DEP assigned a Release Tracking Number ("RTN") to the Site. In connection with remediation work at the Site over the subsequent decades, several monitoring wells were installed in the area. The monitoring wells detected levels of TCE and PCE above permissible levels between 1989 and 1992. Subsequent tracking of private drinking water wells in the area led to the issuance of other RTNs associated with the Site, each issued due to exceedances of TCE and other chemicals. As the Property is downgradient from the Site, the chemicals migrated through the groundwater into the drinking water well on the Property. From 1990 to 2017, Arthur Rossi, doing business as Rossi's Cleaners. owned and operated the dry-cleaning facility at the Site.

In 2014, while the Property was vacant, property managers NRT REO Experts subcontracted the management duties to Spectrum Field Services who then hired Innovative

Property Solutions to perform maintenance on the Property. Spectrum oversaw Innovative during the process of demolishing the existing single-family home on the Property and preparing the Property for resale. While conducting a test of the drinking water well, Spectrum and Innovative found concentrations of TCE at 777 ug/liter, exceeding the permissible level of TCE in drinking water in Massachusetts of 5 ug/liter. Neither Spectrum nor Innovative notified the DEP of the test results. Instead, they filed the 2014 water test results were filed with the Town, which took no action with regard to the results.

In 2016, Leveille Construction bought the Property and built a new home on it for which the Town issued an occupancy permit. Plaintiffs purchased the Property in May 2017. When the Plaintiffs bought the Property, all water for drinking and household use was received from the private drinking water well on the Property. In May 2018, a test of the well on the Property revealed a TCE concentration of 955 ug/liter. The Plaintiffs took steps to remediate the water from the well, however their efforts did not improve the quality of the water and the entire house and fixtures needed further remediation. Ultimately, the Plaintiffs moved out of the Property.

## Standard of Review

In evaluating a Rule 12(b)(6) motion to dismiss, the Court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiff[], the complaint states a claim for which relief can be granted." *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal

conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

## Discussion

The Town contends it is immune as a municipality to the claims of negligence (Count I), nuisance (Count II) and trespass (Count III) and moves to dismiss on these counts, pursuant to Mass. Gen. L.ch. 258. The Plaintiffs attribute two actions by the Town that form the basis of their Amended Complaint. The Plaintiffs allege that the Town "took no action" upon their alleged receipt of certain water test results in 2014. *See* Amended Complaint (Docket No. 11) at p. 31, ¶ 32. The Plaintiffs also allege that the Town issued a certificate of occupancy for the subject property in or around 2017. *See id*. at ¶¶ 35, 36.

The Massachusetts Tort Claims Act ("MTCA"), Mass. Gen. L. ch 258 §1 *et seq*., governs civil actions against public employers. Towns are "public employers" within the meaning of the Act, which provides that "public employer" means, "the commonwealth and any county, city, town, educational collaborative, or district..." Mass. Gen. L. ch. 258 §1. Claims of negligence, nuisance and trespass against a municipality fall under the purview of Mass. Gen. L. ch. 258.  *See generally Morrissey v. New England Deaconess Association*, 458 Mass. 580, 588-589 (2010) (*citing Taygeta Corp. v. Varian Associates*, 436 Mass. 217, 231 (2002) (*quoting Doe v. New Bedford Housing Authority*, 417 Mass. 273, 288 (1994)).

Section 10 of the Massachusetts Tort Claims Act, Mass. Gen. L. ch. 258, provides certain exemptions to the liability of public employers. Mass. Gen. L. ch. 258, § 10(j) specifically provides immunity for allegations of a "failure to act to prevent or diminish the harmful consequences of a condition or situation...which is not originally caused by the public employer," the Supreme Judicial Court has determined that "[t]o have 'originally caused' a

condition or situation for the purposes of § 10 (j), the public employer must have taken an affirmative action," and the act "must have materially contributed to creating the specific 'condition or situation' that resulted in the harm." *Cormier v. City of Lynn*, 479 Mass. 35, 40 (2018), citing *Brum v. Town of Dartmouth*, 428 Mass. 684, 695-696 (1999). So unless the public actor 1) affirmatively acted, 2) which originally caused a condition or situation, and 3) the harmful consequences of that condition or situation resulted in the alleged harm, then immunity shall apply. *See id*. "The requirement of an 'affirmative act' is strict; it is also quite distinct from a failure to prevent harm." *Jane J. v. Commonwealth*, 91 Mass. App. Ct. 325, 328 (2017), (*citing Kent v. Commonwealth*, 437 Mass. 312 (2002)). When alleging affirmative action, "a failure to act will not suffice." *Cormier*, 479 Mass. at 40, citing *Brum*, 428 Mass. at 695-696.

Plaintiff agrees that the Town is immune from suit under c. 258 § 10(j) for all "harmful consequences arising from its failure to act or prevent the … conduct of a third person," and claims that the Town can only be liable if it "originally caused the condition or situation that resulted in the harmful consequence." *See* <u>Plaintiff's Opposition</u>, Docket No. 13, p.7, *citing Reid v. Boston,* 95 Mass App. Ct. 591, 598 (2019). The Town attempts to distinguish its failure to act with the affirmative acts of requesting the test results, not acting on the results, and allowing the Plaintiffs to occupy the Property, bringing the actions outside of the protections of the MTCA. The Plaintiffs also contend, however, that they do not "rely on the issuance of the occupancy permit or the Town's failure to inspect the property to support Counts I, II, or III of the Complaint." *See* <u>Plaintiff's Opposition</u>, Docket No. 13, p.7, n.1. Instead, the Plaintiffs argue that the Town "set in motion a chain of events that allowed TCE to harm the Plaintiffs." *Id*.

Plaintiffs' claims, however, state otherwise. According to the allegations contained in the Amended Complaint, the Plaintiffs allege that the Town, upon their alleged receipt of a 2014

water test, failed to take action.  *See* Amended Complaint at ¶ 32.  The Plaintiffs have brought

this action against the Town for an alleged failure to prevent a potential harm to them however

the Plaintiffs admit that the Town is not the original cause of the alleged TCE in their water

results. According to the Amended Complaint, the subject TCE migrated from the co-defendant,

Rossi's property to the plaintiffs' former property in Oxford. *See id*. at ¶ 20. Accordingly, the

Town's failure to act on the results of the water test following the dry cleaners' release of

chemicals into the groundwater cannot form the basis of Plaintiffs' claims of negligence,

trespass, and nuisance.

Where Plaintiffs' allegations of negligence, trespass and nuisance arise out of the Town's

issuance of a certificate of occupancy for the subject property, the Town is also immune from

liability pursuant to Mass Gen .L.ch. 258 §§ 10(e) and 10(f).  A municipality is immune from

any claim based upon the issuance, denial, suspension or revocation or failure or refusal to issue,

deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization.

Mass. Gen. L. ch. 258 § 10(e).  No action can be maintained against a municipality or its

employees for inadequate or negligent inspection of any property to determine whether the

property complies with or violates any law, regulation, ordinance or code. Mass. Gen. L.ch. 258

§ 10(f).  In the absence of a special duty owed to a plaintiff, different from that which is owed to

the public at large, there can be no action against a municipality for negligent inspection. *Zocchi*

*v. Hinsdale*, 30 Mass.App.Ct. 803, 804 (1991) (*citing Dinsky v. Framingham*, 386 Mass. 801,

804 (1982)). When the actions that allegedly cause a private nuisance occur as a result of the

issuance of a permit, the claim is barred pursuant to the express language of Mass. Gen. L. ch.

258 § 10(e).  *Morrissey v. New England Deaconess Ass'n*, 458 Mass. At 593 (2010).

Accordingly, to the extent the plaintiffs' claims against the Town arise out of the Town's

issuance of a certificate of occupancy for the subject property in or around 2017, those claims are also immune from suit.

*Substantive Due Process – Count IV*

> Pursuant to 42 U.S.C. § 1983:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (1994). The statute is not a source of substantive rights, but rather, creates a cause of action for persons deprived of their federally protected rights. *Baker v. McCollan*, 443 U.S. 137 (1979).

To prevail on a section 1983 claim, a plaintiff must prove both the existence of a federal constitutional or statutory right and a deprivation of that right as a result of a defendant's actions under color of state law. *Watterson v. Page*, 987 F.2d 1, 7 (1st Cir.1993). The plaintiff must show that he or she was deprived of a right, privilege or immunity secured by the Constitution or laws of the United States. *Natriello v. Flynn*, 837 F.Supp. 17, 18-19 (D.Mass. 1993). Section 1983 does not provide a federal remedy for every violation of state law committed by a public official. *Lamoureux v. Haight*, 648 F.Supp. 1169 (D.Mass. 1986).

Substantive due process claims prevent government actions from using power for purposes of oppression or abuse that "shocks the conscience" or action that is "legally irrational." *PFZ Props. Inc., v. Rodriguez*, 928 F.2d 28, 31-32 (1st Cir. 1991) (overruled on other grounds by *San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá*, 687 F.3d 465 (1st Cir. 2012)). In order for a plaintiff to state a claim for substantive due process violations, the plaintiff must show that the (i) defendant violated a right protected by the substantive due process clause

and (ii) defendant's actions "shock the conscience." *Martone Place, LLC v. City of Springfield*, 2017 U.S. Dist. LEXIS 196013 at *29 (citing *S. Commons Condo. Ass'n. v. City of Springfield*, 967 F. Supp. 2d 457, 468 (D.Mass. 2013)). *See also Mongeau v. City of Marlborough*, 492 F.3d 14, 19 (1st Cir. 2007). Courts have described conscience shocking behavior as "extreme," "truly outrageous, uncivilized and intolerable" and "stunning". *Pagan v. Calderon*, 448 F. 3d 16, 32 (1st Cir. 2006). The First Circuit has left the door slightly ajar to apply substantive due process analysis to alleged violations in land use cases for "truly horrendous" situations. *Glob. Tower Assets, LLC v. Town of Rome*, 810 F. 3d 77, 90 (1st Cir. 2016). Truly horrendous behavior in land-use cases may include racial animus, political discrimination, fundamental procedural irregularity, bribery and an overall corrupt process. *PFZ Props., Inc*. 739 F. Supp. at 72. *See also Brockton Power LLC*, 948 F. Supp. 2d 48, 69 (D.Mass. 2013). [1]

While municipalities may be sued civilly for causing a constitutional tort, municipalities can act only through natural persons and governments should only be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988). Congress did not intend municipalities to be held liable unless action pursuant to an official municipal policy caused the constitutional tort. *Monell v. New York City Department of Social Services*, 436 U.S.

---

[1] Plaintiffs argue that the Town, by issuing an occupancy permit and by failing to restrict use of the well despite having failing test results is liable to them under the state-created danger doctrine. To prevail on a state-created danger claim, Plaintiffs must prove not only that a government official's action proximately caused their injuries, but also that these actions shock the court's conscience. *Lockhart–Bembery v. Sauro*, 498 F.3d 69, 77 (1st Cir.2007). "The burden to show state action that shocks the conscience is extremely high, requiring stunning evidence of arbitrariness and caprice that extends beyond mere violations of state law, even resulting from bad faith to something more egregious and more extreme." *Melendez–Garcia v. Sanchez*, 629 F.3d 25, 37 (1st Cir.2010) (internal quotation marks omitted). "In order to 'shock the contemporary conscience,' state action must be 'egregious' and 'outrageous.' " *Id*. (quoting *Rivera*, 402 F.3d at 36); *see also Collins v. City of Harker Heights*, 503 U.S. 115, 128, 112 S.Ct. 1061 (1992) (observing that the Supreme Court has "previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law"). *Doe v. Town of Wayland*, 179 F. Supp. 3d 155, 165 (D.Mass. 2016).

658, 691 (1978).  The plaintiff must assert both the existence of a policy or custom and a causal link between that policy or custom and the constitutional injury.  *Santiago v. Fenton*, 891 F.2d 373, 381 (1st Cir.1989).

Because the Plaintiffs' do not identify a Constitutional right allegedly violated by the Town of Oxford and/or plead a policy or custom of the Town of Oxford that violated the plaintiffs' civil rights, Count IV of the plaintiffs' Amended Complaint must also be dismissed.

### Conclusion

For the foregoing reasons, the Defendant Town of Oxford's Motion to Dismiss (Docket No. 5) is ***granted***.

**SO ORDERED.**

***/s/ Timothy S. Hillman***
**TIMOTHY S. HILLMAN**
**SENIOR DISTRICT JUDGE**
